**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Yana Hart (SBN 306499)
*yhart@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENN SAKS, individually and on behalf of all others similarly situated, | Case No.  8:22-cv-00028 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | 1. VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE § 1750, *et. seq.* |
| MEDIFY AIR LLC, | 2. VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, BUSINESS AND PROFESSIONS CODE § 17500, *et. seq.* |
| Defendant. | 3. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200, *et. seq.* |
| | 4. BREACH OF EXPRESS WARRANTY |
| | 5. BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY |
| | 6. UNJUST ENRICHMENT |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff Glenn Saks ("Plaintiff"), individually and on behalf of all others similarly situated, as more fully described herein (the "Class" and/or "Class Members"), bring(s) this class action against Defendant, Medify Air LLC ("Defendant" and/or "Medify"), and allege(s) the following based upon information and belief, except where otherwise expressly stated as based upon personal knowledge:

## PARTIES

1.     **Plaintiff** is, and at all times relevant hereto was, a citizen of California residing in Orange County. Plaintiff purchased the Medify MA-40 Air Purifier in Dana Point, California on Amazon.com on September 26, 2021 for $290.93. In making his purchase, Plaintiff relied upon advertising bearing the misrepresentations, as fully discussed below, relating to Defendant's misrepresentations of the efficacy and tested ability to remove COVID-19 ("SARS-CoV-2 particles") from the air.

2.     Plaintiff intends to purchase the purifier again with the advertisements as stated, if the advertisements were truthful.

3.     **Defendant Medify Air LLC** is a limited liability company headquartered in Florida with its principal business office at 1325 SW 30th Ave., Deerfield BCH, FL 33442. Defendant, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of California. Defendant is an owner, manufacturer, and distributor of the products described below, and is the company that created and/or authorized the false, misleading, and deceptive labeling and packaging for its air purifiers.

4.     Defendant designed its air purifiers' advertisement to entice consumers who sought to remain safe during the global pandemic and to believe that these purifiers are more efficient than they actually are. If Plaintiff had known that the Products did not and could not provide the advertised benefits and were never tested to fight the SARS-CoV-2 particles, he would not have purchased the Products, or paid the amount that he did for the air purifier.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

5.    In committing the wrongful acts alleged herein, Defendant planned, participated in, and furthered a common scheme by means of false, misleading, deceptive, and fraudulent representations to induce members of the public to purchase the Products. Defendant participated in the making of such representations in that they did disseminate, or cause to be disseminated, said misrepresentations.

## JURIDICTION AND VENUE

6.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and defendant are citizens of different states. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

7.    Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiff is a citizen of California, resides in this District, and purchased the Products from within this District. Moreover, Defendant received substantial compensation from sales in this District, and Defendant made numerous misrepresentations which had a substantial effect in this District, including but not limited to, label, packaging, and Internet advertisements, among other advertising.

8.    Defendant is subject to personal jurisdiction in California based upon sufficient minimum contracts which exist between Defendant and California. Defendant is authorized to do and is doing business in California, regularly advertises, distributes, and sells its Products to California purchasers.

## NATURE OF THE ACTION

9.    Indoor air pollution is among the top five environmental health risks. Individuals' concerns with the indoor air pollution are especially prevalent now – with

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

the frequent fires (especially in California) which increased over the years, and the pandemic.

10.    To fight the indoor air pollution, many purchasers turned to air cleaning devices, such as air purifiers, that are intended to remove pollutants from indoor air.

11.    Defendant manufactures, distributes, and sells air purifiers to California residents and nationwide.

12.    In an effort to take advantage of consumers and its competitors, Defendant engages in various unfair and deceptive practices to ensure that its air purifiers are purchased by consumers over any other similar products.

13.    At the start of the pandemic, to cope with coronavirus fears, people in the U.S. were actively purchasing supplies for their homes – toilet paper, cleansing wipes, sanitizers, and other products – as a result, stores across the U.S. were out of stock for days, weeks, or even months.

14.    According to the Center of Disease Control and Protection, exposure to respiratory droplets containing the viruses is the main way people are infected with SARS-CoV-2 (the virus that causes COVID-19). Exposure to respiratory droplets containing the virus can happen through direct contact (for example, shaking hands) or through the air.[1]

15.    As a result, the COVID-19 pandemic has caused demand for air treatment systems (ATS) to skyrocket.

16.    In 2020, the ATS market grew by approximately 57%, and is expected to double-digit growth rate in each of the next two years.[2]

---

[1] *Science Brief: SARS-CoV-2 and Potential Airborne Transmission*, CENTERS FOR DISEASE CONTROL AND PREVENTION (May 7, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/sars-cov-2-transmission.html (last accessed December 15, 2021).
[2] *Air Purifier Sales Surge in the U.S. Amid the COVID-19 Pandemic*, VERIFY MARKETS (January 26, 2021), https://www.verifymarkets.com/blogs/news-and-interviews/air-purifier-sales-surge-in-the-u-s-amid-the-covid-19-pandemic (last accessed December 15, 2021).

17.    Due to COVID-19's airborne transmission, the demand rates for residential and commercial air treatment systems are unprecedentedly high.[3]

18.    To protect people, businesses that have high amounts of "foot traffic" in an indoor setting have invested in safety precautions to mitigate the spread of the virus. Similarly, individuals have invested in purchasing air purifiers for their home to prevent the spread of COVID-19.

19.    The average person spends approximately 90% of their time indoors, and thus, indoor air quality is known to affect the health, comfort, and well-being of the occupants.[4]

20.    The feeling of safety and security is pivotal to the public. As a result, there is now a significant demand for goods and procedures that "may make people feel safer without actually being substantially safer." [5]

21.    Installation of air treatment systems has been one of the most popular mitigation efforts for both public areas, as well as residential owners.

**Defendant's False and Misleading CADR Representations**

22.    One of the most important features of an air purifier is how quickly and efficiently it can purify the air in a room.[6]

23.    The industry for air purifiers bases performance on a metric called CADR (Clean Air Delivery Rate). CADR is a measure of the amount of contaminant-free air delivered by the room air cleaner expressed in cubic feet per minute.[7]

---

[3] *Id.*

[4] *Indoor Air Quality – What Are the Trends in Indoor Air Quality and Their Effects on Human Health*, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY (September 7, 2021), https://www.epa.gov/report-environment/indoor-air-quality (last accessed December 15, 2021).

[5] Lindsay Christians, *Cold Comfort: With Winter on Its Way, Restaurants Scramble to Stay Alive*, THE CAPITAL TIMES (NOV. 7, 2020).

[6] Reviews of Air Purifiers, *CADR Calculator: Clean Air Delivery Rate in cfm & m³/h*, (updated Aug. 6, 2021) (available at https://reviewsofairpurifiers.com/cadr-calculator/) (last viewed December 8, 2021)

[7] *Residential Air Cleaners – A Technical Summary*, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY (July 2018), https://www.epa.gov/sites/default/files/2018-07/documents/residential_air_cleaners_-_a_technical_summary_3rd_edition.pdf (last accessed December 15, 2021).

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

24.    The CADR is a product of the fractional removal efficiency for a particular pollutant and the airflow rate through the air cleaner. A higher CADR relative to the size of the room will increase the effectiveness of a portable air cleaner. CADR is the only air purifier standard recognized by the American National Standards Institute (ANSI).

25.    Air purifiers' information regarding CADR and related representations regarding air purifiers' ability to clean the air are extremely important to the buyers.

26.    CADR rating is a certified measurement that reflects an air purifier's efficacy.

27.    In fact, CADR ratings measure the volume of air in cubic feet per minute (CFM) with separate scores for reducing tobacco smoke, pollen, and dust from the air.

28.    The purpose of a CADR rating is to provide an objective standard to evaluate the effectiveness of an air purification device. Therefore, representations regarding the CADR rate or similar representations regarding the room square footage that an air purifier can clean, and efficiency of an air purifier provide the most important information to the purchasers.

29.    Since the 1980s, the U.S. industry standard for calculating the CADR related measurements is through an "ANSI/AHAM" test method(s). Specifically, companies use ANSI/AHAM AC-I test method to evaluate portable air cleaner's particle removal performance. This test was developed by the Association of Home Appliance Manufacturers (hence, AHAM), (the same company that first introduced CADR measurements), which is the trade association representing manufacturers of major, portable, and floor care appliances and suppliers to the industry. AHAM has become a standard development organization for numerous technical, performance-based standards for home appliances. The test implemented by AHAM was subsequently reaffirmed as an American National Standard by the American National Standard Institute ("ANSI"). This standard is regularly updated to keep up with

current technology developments and indoor air quality research, and is subject to the high scrutiny of manufacturers, researchers, government labs, private laboratories, and academic professionals.

30.    CADR is measured in a lab by filling a 10.5x12x8 room (1008 ft$^3$) with one of the three of different kinds of particles – smoke, pollen, or dust. The amount of these particles is then measured while running the purifier, and a CADR rate is calculated based on the number of minutes needed to clean the unwanted particles from the air.

31.    The standard and recommended room size and corresponding CADR ratings are depicted below:[8]

| Room Sq. Ft | Suggested CADR |
| --- | --- |
| 155 | 100 |
| 310 | 200 |
| 465 | 300 |
| 620 | 400 |
| 697 and above | 450 |

32.    Due to the testing facility limitations, the CADR rating cannot exceed 400 for dust and pollen, and 450 for smoke.

33.    Notwithstanding the industry measurements of CADR, Defendant misrepresents its CADR rating as well as its air purifiers efficacy.

34.    For instance, for one of its smaller units – Defendant represents that the CADR rating for MA-40 is "380," and that it can "clean large spaces up to 1,600 ft$^2$ in one hour, 840 ft$^2$ in 30 minutes" based on this CADR.

---

[8] *See* AirPurifierRating.org, *Learn About the Air Purifier CADR Scale,* (available at https://air-purifier-ratings.org/learn/cadr-ratings-scale/) (last viewed December 8, 2021) (explaining the CADR to room size conversion); *see also* Reviews of Air Purifiers, *CADR Calculator,* (updated Aug. 6, 2021) (available at https://reviewsofairpurifiers.com/cadr-calculator/).

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

35.    A typical MA-40 advertisement is depicted below (as depicted on Amazon), where in a large font Defendant advertises its Medify MA-40 to be used in 840 ft$^2$ room which could be purified in only 30 minutes:



Medify MA-40 Air Purifier with H13 True HEPA Filter | 840 sq ft Coverage | for Smoke, Smokers, Dust, Odors, Pet Dander | Quiet 99.9% Removal to 0.1 Microns | White, 1-Pack

Visit the Medify Air Store

★★★★☆  ∨    10,455 ratings

List Price: $349.00 Details

With Deal: $216.00 & FREE Returns ∨

You Save: $133.00 (38%)

Get $60 off instantly: Pay $156.00 upon approval for the Amazon Store Card.

Available at a lower price from other sellers that may not offer free Prime shipping.

Color: **White**

36.    Furthermore, Defendant states the following in the section "About this item:"

> MAXIMUM COVERAGE: Cleans large spaces up to 1,600 ft$^2$ in one hour, 840 ft$^2$ in 30 minutes (CADR 380). Ideal for homes, apartments, bedrooms, living rooms, offices, schools, universities, classrooms, hospitals, restaurants, and other businesses.

37.    However, Defendant is well aware that its representations regarding the CADR of 380, the square footage (840 ft$^2$ in 30 minutes and up to 1,600 ft$^2$ in one hour) are false and misleading. In fact, Defendant obtained an energy star certification for its MA-40 purifier, during which it reported to the Environmental Protection

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

CLASS ACTION COMPLAINT

Agency ("EPA")[9] an entirely different CADR rate of 186 for dust, 206 for smoke, and 246 for pollen[10] and an applicable room size of 319 ft$^2$:

**MEDIFY AIR - MA-40**                                    ☐ Compare

Room Size (sq.ft.): **319**              Technology Types: **Fan and Filter**

Annual Energy Use (kWh/year): **344.9**      Partial On Mode Power (Watts): **0.41**

Smoke-Free Clean Air Delivery Rate per Watt: **3.5**    Dust-Free Clean Air Delivery Rate (cfm): **186.0**

Pollen-Free Clean Air Delivery Rate (cfm): **246.0**    Smoke-Free Clean Air Delivery Rate (cfm): **206.0**

38.   Nevertheless, despite Defendant's testing of its MA-40 purifier, Defendant falsely and misleadingly continues to advertise its purifier with the substantially higher CADR rate of 380, while also stating that the air purifier is qualified for usage in a large room of 840 ft$^2$ (and up to 1,600 ft$^2$).

39.   Thus, Defendant's representations regarding its MA-40 purifier are both false and misleading because:

a.   Defendant falsely and deceptively represents the CADR rate of 380, while the actual CADR rate is 186 for dust, 206 for smoke, and 246 for pollen;

b.   Defendant deceptively and misleadingly fails to state which CADR rating is provided (i.e., for pollen, smoke, or dust);

c.   Defendant misrepresents that its MA-40 should be used for larger rooms of 840 ft$^2$ or even 1600 ft$^2$, where air purifiers with

---

[9] Energy Star, *What Makes a Product ENERGY STAR Certified?* (available at https://www.energystar.gov/products/ask-the-experts/what-makes-a-product-energy-star-certified) (last visited on December 8, 2021); *see also* Energy Star, *Media FAQs about Energy Star for Commercial and Industrial Buildings,* (available at https://www.energystar.gov/buildings/about_us/newsroom/media_faqs) (last visited on December 8, 2021)

[10] Energy Star, *Energy Star Certified Air Purifiers (Cleaners),* available at https://www.energystar.gov/productfinder/product/certified-room-air-cleaners/results?formId=601575ef-69ff-4d14-97a0-e520ecdaa455&scrollTo=1094&search_text=&brand_name_isopen=1&markets_filter=United+States&zip_code_filter=&product_types=Select+a+Product+Category&sort_by=smoke_free_clean_air_delivery_1&sort_direction=desc&currentZipCode=92030&page_number=0&lastpage=0&brand_name_filter=MEDIFY+AIR, (last viewed on December 8, 2021)

CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

the CADR rating of 206 (smoke-free) are intended for rooms around 319 ft.$^2$ To purify the room of 840 ft$^2$ or more, a purifier with a rating of 450 is needed.

40.    Defendant's misrepresentations regarding its MA-40 purifier are not unique, since Defendant makes the same representations regarding its other purifiers.

41.    **MA-14.** As shown below, Defendant represents MA-14 purifier as "Medify MA-14 Air Purifier with H13 True HEPA Filter | 200 ft$^2$ Coverage | for Smoke, Smokers, Dust, Odors, Pet Dander | Quiet 99.9% Removal to 0.1 Microns | White, 1-Pack" and states that it "Cleans a room up to 200 ft$^2$ in just 30 minutes" with the maximum coverage of 400 ft$^2$, and CADR of 120. Defendant's representations, similar to the representations of MA-40 are false, deceptive, and misleading:

       a.   Defendant fails to state whether its CADR represents the CADR for pollen, dust, or smoke;

       b.   Based on Energy Star-related testing, Defendant's MA-14 is intended for a room size of 109 ft$^2$;

       c.   Defendant's MA-14 CADR (as reported by Defendant to EPA) is 69 for pollen, 70 for smoke, and 73 for dust. Therefore, Defendant's representations regarding MA-14's CADR rating, and the square footage coverages are false, deceptive, and misleading.

CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

1  **MA-14 Advertisement:**



Roll over image to zoom in

**About this item**

- MAXIMUM COVERAGE: Cleans small spaces up to 400 sq ft in one hour, 200 sq ft in 30 minutes (CADR 120). Ideal for homes, apartments, bedrooms, living rooms, offices, schools, universities, classrooms, hospitals, restaurants, and other businesses.
- HEPA H13 FILTRATION: Trusted to remove 99.9% of particles including odors, smoke, pet dander, dust, and more down to 0.1 microns in size. Captures finer particles than HEPA H11 (0.3 microns).
- ULTRA QUIET: Choose from 3 fan speeds, with the lowest setting operating virtually silent. Runs at 110 Volts at a maximum noise level of 55 dB. For the most discreet operation, enable sleep mode to completely dim

*Compare with the Energy Star reporting of Defendant's purifier:*

**MEDIFY AIR - MA-14**                                                   ☐ Compare

| | |
|---|---|
| Room Size (sq.ft.): 109 | Technology Types: **Fan and Filter** |
| Annual Energy Use (kWh/year): **141.5** | Partial On Mode Power (Watts): **0.2** |
| Smoke-Free Clean Air Delivery Rate per Watt: **2.9** | Dust-Free Clean Air Delivery Rate (cfm): **73.0** |
| Pollen-Free Clean Air Delivery Rate (cfm): **69.0** | Smoke-Free Clean Air Delivery Rate (cfm): **70.0** |

42.    **MA-15.** Defendant's MA-15 (advertised as Medify MA-15 Air Purifier with H13 True HEPA Filter | 330 ft$^2$ Coverage | for Smoke, Smokers, Dust, Odors, Pet Dander | Quiet 99.9% Removal to 0.1 Microns | White, 1-Pack) is also falsely and deceptively advertised that it has CADR of 150, purifying 330 ft$^2$ area in 30 minutes, and up to 660 ft$^2$ in an hour. These representations are also false and misleading based on the EPA testing Defendant submitted to obtain Energy Star certification, which depict that MA-15 is intended for a room of 122 ft$^2$, with the CADR of 79 for smoke, 97 for dust, and 127 for pollen. Therefore, Defendant's representation regarding the CADR rating (of 150 as opposed to 79), failure to state whether the CADR rate is for

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

1    smoke, dust, or pollen, and representations regarding the square footage of the room

2    (330 ft$^2$ and up to 660 ft$^2$) are false, deceptive, and misleading:



**About this item**

- MAXIMUM COVERAGE: Cleans small spaces up to 660 sq ft in one hour, 330 sq ft in 30 minutes (CADR 150). Ideal for homes, apartments, bedrooms, living rooms, offices, schools, universities, classrooms, hospitals, restaurants, and other businesses.
- HEPA H13 FILTRATION: Trusted to remove 99.9% of particles including odors, smoke, pet dander, dust, and more down to 0.1 microns in size. Captures finer particles than HEPA H11 (0.3 microns).
- ULTRA QUIET: Choose from 3 fan speeds, with the lowest setting operating virtually silent. Runs at 110 Volts at a min noise level of 35dB and max of 51dB. For the most discreet operation, enable sleep mode to completely dim the unit's panel lights.
- EASY TO USE FEATURES: Includes a sleek touch panel with 0-8 hour timer, fan speed, sleep mode, filter

Roll over image to zoom in

     

3 VIDEOS

*Compare with the Energy Star reporting of Defendant's purifier:*

**MEDIFY AIR - MA-15**                                      ☐ Compare

Room Size (sq.ft.): 122                    Technology Types: Fan and Filter

Annual Energy Use (kWh/year): 180.2        Partial On Mode Power (Watts): 0.94

Smoke-Free Clean Air Delivery Rate per Watt: 2.6    Dust-Free Clean Air Delivery Rate (cfm): 97.0

Pollen-Free Clean Air Delivery Rate (cfm): 127.0    Smoke-Free Clean Air Delivery Rate (cfm): 79.0



43.    **MA-22.** Defendant's MA-22 is also falsely and deceptively advertised that it has CADR of 150, purifying 330 ft$^2$ area in 30 minutes, and up to 660 ft$^2$ in an hour. Defendant presents MA-22 as "Medify MA-22 Air Purifier with H13 True HEPA Filter | 330 ft$^2$ Coverage | for Smoke, Smokers, Dust, Odors, Pet Dander | Quiet 99.9% Removal to 0.1 Microns | Black, 1-Pack." These representations are false, deceptive, and/or misleading because MA-22 is intended for a room of 119 ft$^2$, with

CLASS ACTION COMPLAINT

the CADR of 77 for smoke, 85 for dust, and 88 for pollen. Therefore, Defendant's representation regarding the CADR rating (of 150 as opposed to 79), failure to state whether the CADR rate is for smoke, dust, or pollen, and representations regarding the square footage of the room (330 ft$^2$ and up to 660 ft$^2$) are false, deceptive, and misleading:



**About this item**

- MAXIMUM COVERAGE: Cleans spaces up to 660 sq ft in one hour, 330 sq ft in 30 minutes (CADR 150). Ideal for homes, apartments, bedrooms, living rooms, offices, schools, universities, classrooms, hospitals, restaurants, and other businesses.
- HEPA H13 FILTRATION: Trusted to remove 99.9% of particles including odors, smoke, pet dander, dust, and more down to 0.1 microns in size. Captures finer particles than HEPA H11 (0.3 microns).
- ULTRA QUIET: Choose from 3 fan speeds, with the lowest setting operating virtually silent. Runs at 120 Volts at a maximum noise level of 53dB. Perfect for running overnight for more restful sleep.
- EASY TO USE FEATURES: Includes a sleek touch operation panel with a 0-8 hour timer, three fan speeds, filter replacement indicator, and child lock, great for babies, children, and pets.
- QUALITY TESTED & BACKED: CARB, ETL, and Energy Star certified. Backed by a USA registered Lifetime Warranty when genuine Medify replacement filters are used. The replacement filter lasts 2,000 hours or about 4 months.

*Compare with the Energy Star reporting of Defendant's purifier:*

## MEDIFY AIR - MA-22 ☐ Compare

| | |
|---|---|
| Room Size (sq.ft.): 119 | Technology Types: **Fan and Filter** |
| Annual Energy Use (kWh/year): 226.5 | Partial On Mode Power (Watts): 0.56 |
| Smoke-Free Clean Air Delivery Rate per Watt: 2.0 | Dust-Free Clean Air Delivery Rate (cfm): 85.0 |
| Pollen-Free Clean Air Delivery Rate (cfm): 88.0 | Smoke-Free Clean Air Delivery Rate (cfm): 77.0 |



44. **MA-25.** Defendant's MA-25 is also falsely and deceptively advertised that it has CADR of 230, purifying 500 ft$^2$ area in 30 minutes, and up to 1,000 ft$^2$ in an hour. Defendant presents MA-22 as "Medify MA-25 Air Purifier with H13 True HEPA Filter | 500 ft$^2$ Coverage | for Smoke, Smokers, Dust, Odors, Pet Dander | Quiet

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

1  99.9% Removal to 0.1 Microns | White, 1-Pack." These representations are false,

2  deceptive, and/or misleading because MA-22 is intended for a room of 199 ft$^2$, with

3  the CADR of 128.5 for smoke, 134.8 for dust, and 155.4 for pollen. Therefore,

4  Defendant's representation regarding the CADR rating (of 230 as opposed to 128.5),

5  failure to state whether the CADR rate is for smoke, dust, or pollen, and



**About this item**

- MAXIMUM COVERAGE: Cleans spaces up to 1,000 sq ft in one hour, 500 sq ft in 30 minutes (CADR 230). Ideal for homes, apartments, bedrooms, living rooms, offices, schools, universities, classrooms, hospitals, restaurants, and other businesses.
- HEPA H13 FILTRATION: Trusted to remove 99.9% of particles including odors, smoke, pet dander, dust, and more down to 0.1 microns in size. Captures finer particles than HEPA H11 (0.3 microns).
- ULTRA QUIET: Choose from 3 fan speeds, with the lowest setting operating virtually silent. Runs at 110 Volts at a min noise level of 35dB and max of 51dB. For the most discreet operation, enable sleep mode to completely dim the unit's panel lights.
- EASY TO USE FEATURES: Includes a sleek touch screen operation panel with 0-8 hour timer, fan speed, sleep mode, filter replacement indicator, and child lock, great for both kids and pets.
- QUALITY TESTED & BACKED: CARB, ETL, and Energy Star certified. Backed by a USA registered Lifetime Warranty when genuine Medify replacement filters are used. The replacement filter (B084Q965BF) lasts 2,500 hours or about 3-4 months.

Roll over image to zoom in

6 VIDEOS

19  representations regarding the square footage of the room (500 ft$^2$ and up to 1,000 ft$^2$)

20  are false, deceptive, and misleading:

21  *Compare with the Energy Star reporting of Defendant's purifier*:

**MEDIFY AIR - MA-25**                              ☐ Compare

| | |
|---|---|
| Room Size (sq.ft.): **199** | Technology Types: **Fan and Filter** |
| Annual Energy Use (kWh/year): **189.3** | Partial On Mode Power (Watts): **0.58** |
| Smoke-Free Clean Air Delivery Rate per Watt: **4.0** | Dust-Free Clean Air Delivery Rate (cfm): **134.8** |
| Pollen-Free Clean Air Delivery Rate (cfm): **155.4** | Smoke-Free Clean Air Delivery Rate (cfm): **128.5** |

CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

45.    **MA-WM35.** Defendant's MA-35 (wall mounted unit) is also falsely and deceptively advertised that it has CADR of 290, purifying 640 ft$^2$ area in 30 minutes. Defendant presents MA-35 as "Medify MA-35 Air Purifier with H13 HEPA filter - a higher grade of HEPA | Wall Mounted | 99.9% Removal in a Modern Design Black 1-Pack." These representations are false, deceptive, and/or misleading because MA-35 is intended for a room of 253 ft$^2$, with the CADR of 163 for smoke, 160 for dust, and 167 for pollen. Therefore, Defendant's representation regarding the CADR rating (of 230 as opposed to 160), failure to state whether the CADR rate is for smoke, dust, or pollen, and representations regarding the square footage of the room (640 ft$^2$ in 30 minutes) are false, deceptive, and misleading:



**About this item**

- The most powerful wall mounted air purifier on the market with H13 HEPA filter.
- A higher grade of HEPA filter- H13 Filters (higher rated than True HEPA) 99.9% particle removal.
- Improves air quality for a room up to 640 sq ft in just 30 minutes (CADR 290). Perfect for Office, Bedroom, Dorms, Baby Nurseries
- Features Child lock, Filter replacement indicator, Touch screen panel, 3 Fan speed, making it one of the best in the market.
- The MA-35 comes with wall mounting accessories but does NOT include the stand. | Replacement Filter ASIN: B08JNYNP78

*Compare with the Energy Star reporting of Defendant's purifier:*

**MEDIFY AIR - MA-WM35**                                           ☐ Compare

Room Size (sq.ft.): 253                    Technology Types: Fan and Filter

Annual Energy Use (kWh/year): 208.1        Partial On Mode Power (Watts): 0.39

Smoke-Free Clean Air Delivery Rate per Watt: 4.6    Dust-Free Clean Air Delivery Rate (cfm): 160.0

Pollen-Free Clean Air Delivery Rate (cfm): 167.0    Smoke-Free Clean Air Delivery Rate (cfm): 163.0

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

46.    **MA-50.** Defendant's MA-50 is also falsely and deceptively advertised that it has CADR of 500, purifying 1,100 ft$^2$ area in 30 minutes and 2,200 ft$^2$ in one hour. Defendant presents MA-50 as "Medify MA-50 Air Purifier with H13 True HEPA Filter with UV | 1100 ft$^2$ Coverage | for Smoke, Smokers, Dust, Odors, Pet Dander | Quiet 99.9% Removal to 0.1 Microns | White, 1-Pack." These representations are false, deceptive, and/or misleading because MA-50 is intended for a room of 428 ft$^2$, with the CADR of 276 for smoke, 271 for dust, and 322 for pollen. Therefore, Defendant's representation regarding the CADR rating (of 500 as opposed to 276), failure to state whether the CADR rate is for smoke, dust, or pollen, and representations regarding the square footage of the room (1,100 ft$^2$ in 30 minutes and 2,200 ft$^2$ in an hour) are false, deceptive, and misleading:



About this item
- UV LIGHT: An added layer of protection so particles are trapped and fully removed from the air. Includes a touch operation panel with 2-12 hour timer, 4 fan speeds, sleep mode, filter replacement indicator, and child lock, great for both kids and pets.
- MAXIMUM COVERAGE: Cleans large spaces up to 2,200 sq ft in one hour, 1,100 sq ft in 30 minutes (CADR 500). Ideal for homes, apartments, bedrooms, living rooms, offices, schools, universities, classrooms, hospitals, restaurants, and other businesses.
- HEPA H13 FILTRATION: Trusted to remove 99.9% of particles including odors, smoke, pet dander, dust, and more down to 0.1 microns in size.

Roll over image to zoom in

    

*Compare with the Energy Star reporting of Defendant's purifier:*

| MEDIFY AIR - MA-50 | | | ☐ Compare |
| --- | --- | --- | --- |
| Room Size (sq.ft.): **428** | | Technology Types: **Fan and Filter** | |
| Annual Energy Use (kWh/year): **414.8** | | Partial On Mode Power (Watts): **0.51** | |
| Smoke-Free Clean Air Delivery Rate per Watt: **3.9** | | Dust-Free Clean Air Delivery Rate (cfm): **271.0** | |
| Pollen-Free Clean Air Delivery Rate (cfm): **322.0** | | Smoke-Free Clean Air Delivery Rate (cfm): **276.0** | |



CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

47. Defendant's representations regarding its MA-50 are especially shocking given the fact that the industry standard CADR rating <u>cannot even exceed the rate of 450</u>. Therefore, not only Defendant falsely, misleadingly, and deceptively advertises its air purifier, but it also assigned a CADR rating which is statistically unreliable and exceeds the maximum CADR rating based on the AHAM industry standards.

48. Defendant's unrealistic CADR (on its MA-50) and similarly exaggerated representations on other purifiers seek to take advantage of purchasers <u>and</u> Defendant's prominent and non-prominent competitors which adhere to well recognized industry standards and provide the industry standard approved CADR rating as well as accurate representations regarding intended square footage of rooms the purifiers will clean/purify.

49. **MA-112.** Defendant similarly falsely and misleadingly advertises its MA-112 models. Defendant falsely and deceptively advertised that MA-112 has CADR of 950, purifying 2,500 ft$^2$ area in 30 minutes and 3,700 ft$^2$ in one hour:



About this item

- MAXIMUM COVERAGE: Cleans large spaces up to 3,700 sq ft in one hour, 2,500 sq ft in 30 minutes (CADR 950). Ideal for homes, apartments, bedrooms, living rooms, offices, schools, universities, classrooms, hospitals, restaurants, and other businesses.
- DUAL HEPA H13 FILTRATION: Trusted to remove 99.9% of particles including odors, smoke, pet dander, dust, and more down to 0.1 microns in size. Captures finer particles than HEPA H11 (0.3 microns).
- ULTRA QUIET: Choose from 4 fan speeds, with the lowest setting operating virtually silent. Runs at 110 Volts at a maximum noise level of 70 dB. For the most discreet operation, enable sleep mode to completely dim the unit's panel lights.
- EASY TO USE FEATURES: Includes a

50.    These representations are false, deceptive, and/or misleading because MA-112 is intended for a room of 698 ft$^2$, with the CADR of 450 for smoke, 400 for dust, and 450 for pollen. Therefore, Defendant's representation regarding the CADR rating (of 950 as opposed to 400), failure to state whether the CADR rate is for smoke, dust, or pollen, and representations regarding the square footage of the room (2,500 ft$^2$ in 30 minutes and 3,700 ft$^2$ in an hour) are false, deceptive, and misleading. *Compare with the Energy Star reporting of Defendant's purifier*:

**MEDIFY AIR - MA-112**                                     ☐ Compare

Room Size (sq.ft.): **698**                    Technology Types: **Fan and Filter**
Annual Energy Use (kWh/year): **527.4**        Partial On Mode Power (Watts): **0.6**
Smoke-Free Clean Air Delivery Rate per Watt: **5.0**    Dust-Free Clean Air Delivery Rate (cfm): **400.0**
Pollen-Free Clean Air Delivery Rate (cfm): **450.0**    Smoke-Free Clean Air Delivery Rate (cfm): **450.0**



51.    Since Defendant makes similar misrepresentations on most, or nearly all of its air purifiers, Plaintiff will collectively refer to the purifiers listed above *and* other substantially similar air purifiers as "**Products**." Specifically, the above referenced purifiers and unknown other purifier Products can be identified based on Defendant's substantially similar statements regarding its air purifiers:

        a.    Defendant misrepresents the CADR regarding the products (for example, Defendant provided a CADR rating higher than its EPA/AHAM testing it obtained, and/or provides CADR that exceeds the industry standard norm of 450);

        b.    Defendant fails to state if the CADR was for dust, pollen, or smoke, making its representations misleading and confusing;

        c.    Defendant exaggerates the room square footage within which the air purifier was intended to be used;

        d.    Defendant misrepresents that its purifiers were tested to destroy SARS-CoV-2 particles (as described below), while in reality it has not tested its purifiers for their ability to remove SARS-CoV-2 particles.

CLASS ACTION COMPLAINT

**Defendant's False and Misleading COVID-19 Representations**

52.    Further, notwithstanding Defendant's multiple misrepresentations regarding the efficacy of its purifiers which substantially exceed the actual EPA testing Defendant obtained, Defendant also sought to take advantage of the consumers' fears induced by COVID-19.

53.    Fear has drastically increased since the onset of the pandemic. In order to safeguard their health, many Americans been actively purchasing the air purifiers that they believe are capable of combatting SARS-CoV-2 particles.

54.    To monetize on the fear of many Americans and take advantage of the vulnerable public, Defendant falsely and misleadingly began advertising all of its air purifiers as having been tested to remove 99.99% of airborne SARS-CoV-2 particles from the air.  In reality, Defendant <u>has not tested</u> a single air purifier to confirm whether or not its air purifiers are capable of destroying the virus particles. Thus, Defendant's claims that all of its purifiers remove airborne SARS-CoV-2 particles and overstate the Products' ability to fight COVID-19, which instill customers with a false sense of security through misleading claims, enticing them to make purchasing decisions based on their fears.

55.    Defendant introduced its COVID-related campaign sometime during the pandemic – around September 1, 2021 or prior, and began advertise the Products, which are designed for commercial and residential applications, as being successfully tested to "remove 99.99% of airborne particles related to COVID-19 (SARS-CoV-2) in as little as 30 minutes."

56.    In fact, Defendant has become a leading figure in the market for selling and distributing air purifiers which "have been tested" to fight against indoor air pollution by removing harmful contaminants from the air. Defendant's uniform, widespread marketing campaign is coordinated to present universal representations concerning the effectiveness of the Products.

CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA. 90265

57.    In fact, on September 1, 2021, Defendant issued the following press release that was disseminated and published through a number of various websites that uniformly stated "Medify Air Purifiers Tested and Proven to Remove 99.9% of COVID-19/SARS-CoV-2 Airborne Particles.":



see also

CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

1    58.    The heading of the press release misleadingly implied that all Medify air

2    purifiers were tested and proven to remove SARS-CoV-2 particles, even though none

3    of the air purifiers have been tested on their capabilities to remove the COVID-19

4    virus.

5    59.    The press release went on to further state:

6

7        DEERFIELD BEACH, Fla., Sept. 01, 2021 (GLOBE
         NEWSWIRE) -- Medify Air LLC, in conjunction with
8        Aerosol Research and Engineering Laboratories, have
         announced promising test results for the MA-40 and MA-50
9        air purifiers and their ability to reduce the amount of airborne
         pathogens associated with the SARS-CoV-2 (COVID-19)
10       virus.

11       Medify's MA-40 and MA-50 air purifiers, designed for
12       commercial and residential applications, were found to
         remove 99.99% of airborne particles related to COVID-19
13       (SARS-CoV-2) in as little as 30 minutes at its highest speed.

14       "We're incredibly encouraged by the results of this study
15       conducted by ARE Labs regarding the effectiveness of
16       Medify's MA-40 and MA-50 air purifiers," said J Henry
         Scott, Medify CEO. "With the MA-40 and MA-50 models,
17       reducing the amount of viral particles in the air is as simple
18       as turning on the machine and allowing it to go to work."

19
         The MA-40 and MA-50 air purifiers from Medify are
20       equipped with an ozone-free ionizer and true HEPA filter and
21       are designed to reduce airborne volume of bacteria, viral
         particles, mold and fungal spores, and other airborne particles
22       in controlled room air. In this study, ARE Labs subjected the
23       MA-40 and MA-50 purifiers to efficacy testing at Speed 1 and
         Speed 3 to demonstrate their effectiveness against viruses,
24       bacteria, and mold spores.

25
26       At both speeds and against different organisms, Medify air
27       purifiers    were    found    to    reduce    viable    bioaerosol

28

CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

> concentrations of viruses. To read the full report from ARE
> Labs, please click here.
>
> Medify's MA-40 and MA-50 air purifiers are in stock and
> ready to ship. See below for additional information on
> pricing, financing, or to contact a representative.

60.   Defendant intended to capitalize on its misleading and false statements (that the air purifiers have been tested and proven to remove SARS-CoV-2) while knowing that the reasonable consumers are not scientists and would not read or understand the test results which showed that none of Defendant's air purifiers (including MA-40 and MA-50) were tested on non-COVID-19 particles.

61.   Furthermore, Defendant's statements are flawed and based on unreliable, and most importantly, inapplicable testing to the COVID-19. In fact, Defendant has not tested its air purifiers to determine if they remove the SARS-CoV-2 particles. Defendant has not even engaged a laboratory capable to verify the statements. Thus, Defendant falsely states that its air purifiers are capable of removing SARS-CoV-2 particles.

62.   In fact, to properly test whether or not an air purifier is cable to remove SARS-CoV-2, the studies must use the surrogate virus which expresses the SARS-CoV-2 target protein.[11]

63.   If a surrogate virus is used, the testing process must also include an experiment to validate that the surrogate virus yields results that are consistent with those obtained with authentic virus regarding the relative impact of different variants.[12]

---

[11] *COVID-19: Developing Drugs and Biological Products for Treatment or Prevention*, FOOD AND DRUG ADMINISTRATION (February 2021), https://www.fda.gov/media/137926/download (last accessed December 15, 2021).
[12] *Id.*

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

64. Defendant's testing relies on the MS2 bacteriophage, which is a *tentative* surrogate to SARS-CoV-2.[13] However, the MS2 bacteriophage and the endospores from Bacillus subtilis are not an approved nor accepted surrogate to COVID-19 by the FDA. Furthermore, Defendant did not conduct an experiment to validate that the surrogate virus yields results that are consistent with those obtained with authentic virus regarding the relative impact of different variants.

65. However, even if the surrogate was approved, it would nevertheless be inaccurate to claim the Products can purify SARS-CoV-2 particles from the air, because the two strains are not the same.

66. "Research on the 'real' coronavirus… must be done using protective biosafety level 3, or BSL-3, laboratories."[14]

67. Defendant conducted testing at Aerosol Research and Engineering Laboratories, Inc., which is not a BSL-3 facility.

68. As a result, Defendant has not conducted any testing of the live SARS-CoV-2 virus, or even used accepted surrogates, or proper facilities allowing such testing. Therefore, Defendant's statements misleadingly and falsely imply that its purifiers have been tested and proven to remove live SARS-CoV-2 virus, while in reality, they have not been tested to do so.

69. Nevertheless, Defendant continues its advertising campaign by stating that the purifiers have been "tested to remove 99.99% of airborne COVID-19 particles:"

---

[13] *Efficacy of the M40 Air Purifier against a Broad Range of Respirable Microorganisms: High Speed Broad Range Efficacy and Low Speed Select Species Efficacy,* AEROSOL RESEARCH AND ENGINEERING LABORATORIES (August 18, 2021), https://medifyair.com/pages/reports/ (last accessed December 15, 2021).

[14] *Surrogate Coronavirus May Help Researchers Discover Therapies and Vaccines*, ALBERT EINSTEIN COLLEGE OF MEDICINE (July 20, 2020), https://einsteinmed.edu/news/2386/surrogate-coronavirus-may-help-researchers-discover-therapies-and-vaccines/ (last accessed December 15, 2021).

*Interim Laboratory Biosafety Guidelines for Handling and Processing Specimens Associated with Coronavirus Disease 2019 (COVID-19),* CENTERS FOR DISEASE CONTROL AND PREVENTION (October 28, 2021), https://www.cdc.gov/coronavirus/2019-ncov/lab/lab-biosafety-guidelines.html.

CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265



19    70.    Defendant has woven these misrepresentations into an extensive and
20  long-term advertising campaign in an attempt to prey on desperate and cautious
21  Americans' desire to cleanse the air and protect themselves from the COVID-19 virus.

22    71.    Defendant's *profits over people* scheme which includes false and
23  deceptive claims about the efficacy of the Products is uniformly advertised through
24  its marketing and other media, which are specifically targeted to consumers that are
25  aware and fearful of the COVID-19 virus.

26    72.    Through its false, misleading, and deceptive advertising, Defendant has
27  duped thousands or more consumers into buying the Products at stores across
28

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

California and the United States based on their material claims that the Products remove 99.9% of SARS-CoV-2 particles from the air described *supra*.

73.    Defendant's fraudulent, deceptive, and misleading conduct violates and continues to violate California and federal advertising laws. Further, Defendant breached and continues to breach its express and implied warranties regarding the Products. Additionally, Defendant has been and continues to be unjustly enriched.

74.    Plaintiff and members of the Plaintiff's Class purchased the Products in reliance on Defendant's material misrepresentations and would not have purchased the Products had they known the claims as described herein were and are false.

75.    Plaintiff seeks injunctive relief against Defendant for its deceptive, unfair, unlawful, and fraudulent decision to advertise its Products Defendant's material claims are false, misleading, and deceptive under California's Consumers Legal Remedies Act ("CLRA"), Civil Code Section 1750 *et seq.*, Unfair Competition Law ("UCL"), Business and Professions Code Sections 17200, *et seq.*, and the False Advertising Law ("FAL") 17500 *et seq.*, and the common law. Compliance with remedial statutes like those underlying this lawsuit will benefit Plaintiffs, the class, consumers, and the general public. Plaintiff also seeks restitutionary relief under the UCL, FAL, and the common law.

### Plaintiff's Experience and Purchase

76.    Plaintiff purchased MA-40 air purifier in reliance on Defendant's false and misleading representations, including but not limited to:

a.    Products have been tested and were capable of removing the harmful SARS-CoV-2 particles from the air, which Defendant and its agents prepared, approved, and disseminated statewide and nationwide.

b.    Products depicted a high CADR rating of 380 (which was false and was not based on the AHEM industry standards, and failed

CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

to state whether the reported CADR was for dust, pollen, or smoke);

    c.   Products depicted that they were intended to purify larger areas/square footage – 840 ft$^2$ in 30 minutes and up to 1,600 ft$^2$

77.   Plaintiff saw Defendant's online representations regarding the MA-40 purifier as discussed above (*see* ¶¶ 34-36). Plaintiff relied on Defendant's representations regarding an impressive CADR rating, and the intended square footage.

78.   Defendant's uniform misrepresentations regarding an exaggerated CADR rating, an exaggerated square footage of an intended room the purifier is meant to clean, and a misleading CADR rating which wholly omits whether the rate is for dust, pollen, or smoke are misleading, deceptive, confusing, and false.

79.   Prior to the purchase, Plaintiff saw and relied on Defendant's press release published on September 1, 2021, that stated, "Medify Air Purifiers Tested and Proven to Remove 99.9% of COVID-19/SARS-CoV-2 Airborne Particles.":



CLASS ACTION COMPLAINT

80.    In reality, the Product purchased by Plaintiff does not and cannot perform as advertised. It is intended for a significantly smaller room of 319 ft$^2$, has substantially smaller CADR rating (of 186 for dust, 206 for smoke, and 246 for pollen), and it has never been tested for its ability to remove SARS-CoV-2 particles.

81.    As a result of Defendant's representations, Plaintiff was harmed by purchasing Defendant's Product.

## CLASS ALLEGATIONS

82.    Plaintiff brings this action on his own behalf and on behalf of all other persons similarly situated. The Class which Plaintiff seeks to represent comprises:

> All persons who purchased the Products in the United States or, alternatively, the State of California, for personal use and not for resale during the time period of four (4) years prior to the filing of the complaint through the present.

> Said definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

83.    There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact common to the Class predominate over questions which may affect individual Class members. Common questions of law and fact include, but are not limited to, the following:

a.    Whether Defendant's conduct constitutes an unfair method of competition or unfair or deceptive act or practice in violation of California Civil Code Section 1750, *et seq.;*

b.    Whether Defendant used deceptive representations in connection with the sale of the Products in violation of California Civil Code Section 1750, *et seq.;*

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

c.  Whether Defendant represented the Products have characteristics that they do not have in violation of California Civil Code Section 1750, *et seq.;*

d.  Whether Defendant advertised the Products with the intent not to sell them as advertised in violation of California Civil Code Section 1750, *et seq.;*

e.  Whether Defendant's advertising is untrue or misleading within the meaning of Business and Professions Code section 17500, *et seq.;*

f.  Whether Defendant knew or by the exercise of reasonable care should have known their advertising was and is untrue or misleading in violation of Business and Professions Code section 17500, *et seq.;*

g.  Whether Defendant made false and misleading representations in their advertising and labeling of the Products in violation of Business and Professions Code section 17500, *et seq.;*

h.  Whether Defendant's conduct is an unfair business act or practice within the meaning of Business and Professions Code section 17200, *et seq.;*

i.  Whether Defendant's conduct is a fraudulent business act or practice within the meaning of Business and Professions Code section 17200, *et seq.;*

j.  Whether Defendant's conduct is an unlawful business act or practice within the meaning of Business and Professions Code section 17200, *et seq.;*

k.  Whether Plaintiff and the Class paid more money or a premium amount for the Products than they actually received; and

CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

l. How much more money or premium amount Plaintiff and the Class paid for the Products than they actually received.

84. Plaintiff's claims are typical of the claims of the Class, and Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained competent and experienced counsel in class action and other complex litigation.

85. Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations and material omissions. Plaintiff purchased the Products under the false belief that the Products were substantially more efficient than they are based on the objective standard and testing, and had the ability to successfully remove 99.9% of airborne SARS-CoV-2 particles. Plaintiff relied upon Defendant's advertising and would not have purchased the Products if he had known that the Products did not have these capabilities.

86. A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the Class to prosecute their claims individually.

87. The trial and litigation of Plaintiff's claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economics of scale, and comprehensive supervision by a single court.

88. Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

89.     Absent a class action, Defendant will likely retain the benefits of its wrongdoing. Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the Class will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

## COUNT ONE

**Violation of California Consumers Legal Remedies Act,**

**California Civil Code 1750, *et seq*.**

90.     Plaintiff repeats and realleges the allegations of the previous paragraphs and incorporates the same as if set forth herein at length.

91.     Plaintiff brings this cause of action pursuant to Civil Code Section 1750, *et seq.*, the Consumers Legal Remedies Act ("CLRA"), on his own behalf and on behalf of all other persons similarly situated. Plaintiff seeks to represent a Class consisting of "All persons who purchased the Products in the United States or, alternatively, the State of California, for personal use and not for resale during the time period of four years prior to the filing of the complaint through the present." Excluded from the Class are Defendant's officers, directors, and employees, and any individual who received remunerations from Defendant in connection with that individual's use or endorsement of the Products.

92.     Plaintiff and the Class members are "consumers" within the meaning of California Civil Code Section 1761(d).

93.     The Class consists of thousands of persons, the joinder of whom is impracticable.

94.     There are questions of law and fact common to the Class, which questions are substantially similar and predominate over questions affecting the individual Class members, as set forth hereinabove.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

95.     The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with the sale of goods.

96.     The sale of Defendant's products to Plaintiffs and Class members constitutes "transaction" within the meaning of California Civil Code Section 1761(e).

97.     Defendant's products are "goods" within the meaning of California Civil Code Section 1761(a).

98.     The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with a sale of goods and prohibits misrepresenting the source, sponsorship, approval, or certification of goods and services, as well as affiliation/connection or association with, or certification by, another. *See* California Civil Code Section 1770 (a)(2-3). Defendant misrepresented the air purifiers as having been tested and proven to remove the SARS-Cov-2 particles, while they have not tested the Products. Furthermore, Defendant misrepresented the CADR rating/square footage, which indicated a certain certification of goods as well as affiliation/approval of the industry standard CARD (by AHAM/ANSI).

99.     The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with a sale of goods and prohibits "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have." California Civil Code Section 1770 (a)(5).

100.     The CLRA also prohibits representing that the products are of "a particular standard, quality, or grade" when it is of another. California Civil Code Section 1770(a)(7).

101.     The CLRA prohibits advertising goods with the intent not to sell them as advertised and representing the goods have been supplied in accordance with a

previous representation when they have not. California Civil Code Section 1770(a)(9) and (a)(16).

102.    The policies, acts, and practices described herein were intended to result in the sale of the Products to the consuming public and violated and continue to violate the CLRA by (1) using deceptive representations in connection with the Products; and (2) advertising the Products with intent not to sell them as advertised.

103.    Defendant fraudulently deceived Plaintiff and the Class by misrepresenting the Products as having characteristics which they do not have, e.g., advertising the Products are capable of removing SARS-CoV-2 particles from the air, and that the Products have a higher CADR value than in actuality. In doing so, Defendant misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

104.    Defendant misrepresented the CADR regarding the products (for example, Defendant provided a CADR rating higher than its EPA/AHEM testing it obtained, and/or provides CADR that exceeds the industry standard norm of 450).

105.    Defendant fails to state if the CADR was for dust, pollen, or smoke, making its representations misleading and confusing.

106.    Defendant exaggerates the room square footage within which the air purifier was intended to be used.

107.    Defendant fraudulently deceived Plaintiff and the Class by labeling and advertising the Products with intent not to sell them as advertised:

a.    Products falsely depicted that they have been tested and were capable of removing the harmful SARS-CoV-2 particles from the air, which Defendant and its agents prepared, approved, and disseminated statewide and nationwide. Specifically, Plaintiff relied on the press release published on September 1, 2021 that

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

claims that "Medify Air Purifiers Tested and Proven to Remove 99.9% of COVID-19/SARS-CoV-2 Airborne Particles."

    b.    Products depicted a high CADR rating which was false and is not based on the AHAM industry standards;

    c.    Products depicted that they were intended to purify larger areas/square footage than the square footage depicted by the industry standard testing.

108.    In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

109.    Defendant designed the Products' advertisement to entice consumers who sought to remain safe during the global pandemic and to believe that these purifiers are more efficient than they actually are. If Plaintiff had known that the Products did not and could not provide the advertised benefits, were never tested to fight the SARS-CoV-2 particles, he would not have purchased the Products, let alone paid a "premium" for such a valued benefit.

110.    Defendant knew or should have known, through the exercise of reasonable care, that the Products' advertising and labeling were misleading.

111.    Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights, and Defendant was wanton and malicious in its concealment of the same.

112.    Defendant's advertising and labeling of the Products were material factors in Plaintiff's and the Class's decisions to purchase the Products. Based on Defendant's labeling and advertising of the Products, Plaintiff and the Class reasonably believed that they were purchasing Products capable of removing COVID-19 airborne particles. Had they known the truth of the matter, that the Products did

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

not actually remove such particles, Plaintiff and the Class would not have purchased the Products.

113.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair, unlawful, and fraudulent conduct. Specifically, Plaintiff paid for Products that he believed had the capability of removing SARS-CoV-2 particles from the air. In reality, the Products were not tested using the live virus and the benefits as advertised are entirely unsupported. Due to the continuous stress surrounding the pandemic and strong desire to protect oneself from contracting the virus, Plaintiff purchased the Product based on his belief that the Product would purify COVID-19 from the air, thus increasing protection against viral presence. Plaintiff would not have purchased the Product had he known the claims were false.

114.    Defendant's false and misleading labeling and advertising should be enjoined due to their false, misleading and/or deceptive nature.

115.    Pursuant to Section 1780(a)(2) of the Act, Plaintiff seeks injunctive relief in the form of an order enjoining the above-described wrongful acts and practices of Defendant, including, but not limited to, an order enjoining Defendant from continuing to make the label and advertising claims challenged herein.

    a.    Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

        (1) Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to deceptively market the Product as "Tested and Proven to Remove 99.9% of COVID-19/SARS-Cov-2 Airborne Particles." Injunctive relief is necessary to prevent Defendant from continuing to engage in the unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies. Further, injunctive relief, in the form of marketing and advertising modifications, is necessary to dispel public misperception about

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

the Product that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such relief is also not available through a legal remedy as monetary damages may be awarded to remedy past harm (i.e., purchasers who have been misled), while injunctive relief is necessary to remedy future harm (i.e., prevent future purchasers from being misled), under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this time. Plaintiff is currently unable to accurately quantify the damages caused by Defendant's future harm (e.g., the dollar amount that Plaintiff and Class members overpay pay for the underfilled Product), rendering injunctive relief a necessary remedy.

116. Plaintiff shall be irreparably harmed if such an order is not granted.

117. Plaintiff intends to amend the complaint to seek restitution and punitive damages if Defendant fails to cure the issues set forth herein within thirty (30) days. At this time, Plaintiff pursues only injunctive relief under §1782(d) and § 1780(a)(2).

## COUNT TWO

### Violation of California False Advertising Law,

### Business & Professions Code 17500, *et seq*.

118. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein at length.

119. Plaintiff brings this cause of action pursuant to Business and Professions Code section 17500, *et seq*., on his own behalf and on behalf of all other persons similarly situated. Plaintiff seeks to represent a Class consisting of "All persons who purchased the Product in the United States or, alternatively, the State of California, for personal use and not for resale during the time period of four (4) years through the present." Excluded from the Class are Defendant's officers, directors, and employees,

and any individual who received remuneration from Defendant in connection with that individual's use or endorsement of the Product.

120.    California's False Advertising Law, California Business and Profession Code section 17500, *et seq*., makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, in any advertising device or in any other manner or means whatever, including over the Internet, any statement, concerning personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

121.    Defendant knowingly spread misleading claims regarding the Products as a means to mislead the public about the actual capabilities and efficacy of the Products.

122.    Defendant controlled the labeling, advertising, production, and packaging of the Products. They knew or should have known, through the exercise of reasonable care, that their representations and omissions about the abilities and efficacy of the Products were untrue, deceptive, and misleading.

123.    Defendant misrepresented the CADR regarding the products (for example, Defendant provided a CADR rating higher than its EPA/AHEM testing it obtained, and/or provides CADR that exceeds the industry standard norm of 450).

124.    Defendant fails to state if the CADR was for dust, pollen, or smoke, making its representations misleading and confusing.

125.    Defendant exaggerates the room square footage within which the air purifier was intended to be used.

126.    Defendant's actions of advertising and displaying misleading claims and falsely advertising the Products as being tested to remove 99.9% of SARS-CoV-2 particles and as having a higher CADR value than in actuality for each Product are likely to deceive the general public.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

127.    Defendant's actions in violation of Section 17500 were false and misleading such that the general public is and was likely to be deceived.

128.    Pursuant to Business & Professions Code Section 17535, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their practice of falsely advertising that the Product can purify COVID-19 from the air. Likewise, Plaintiff and the class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentation in amount to be determined by trial.

129.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiff purchased the Products in reliance upon the claims by Defendant that the Products was of the quality and capability represented by Defendant's packaging and advertising. Plaintiff would not have purchased the Products if he had known that the claims and advertising as described herein were false.

130.    Defendant is falsely claiming that their Products are tested to successfully remove 99.99% of airborne COVID-19/SARS-CoV-2 particles – a deadly, highly contagious virus that has poured fear into peoples' daily lives. In doing so, Defendant has enticed Plaintiff and the Class to purchase the Products with despicable, conscious disregard for Plaintiff's safety, because the Products have not in fact been tested to remove SARS-CoV-2 particles from the air. Furthermore, Defendant maliciously misrepresents the efficacy of the air purifiers (including but not limited to CADR-related representations and sq footage). In fact, as discussed above, Defendant is well aware based on its own testing submitted to the EPA to obtain energy star that its CADR and square footage are inaccurate. As a result of

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

1    Defendant's fraudulent and malicious acts, Plaintiff seeks exemplary or punitive
2    damages under California Civil Code § 3294.

3                                    **COUNT THREE**

4                      **Violation of California Unfair Competition Law,**

5               **Business & Professions Code Section 17200, *et seq.***

6          131.   Plaintiff repeats and realleges the allegations set forth above and
7    incorporates the same as if set forth herein at length.

8          132.   Plaintiff brings this cause of action pursuant to Business and Professions
9    Code section 17200, *et seq*., on his own behalf and on behalf of all other persons
10   similarly situated. Plaintiff seeks to represent a Class consisting of "All persons who
11   purchased the Products in the United States or, alternatively, the State of California,
12   for personal use and not for resale during the time period of four (4) years prior to the
13   filing of the complaint through the present." Excluded from the Class are Defendant's
14   officers, directors, and employees, and any individual who received remuneration
15   from Defendant in connection with that individual's use or endorsement of the
16   Product.

17         133.   In the advertising of the Products, Defendant make false and misleading
18   statements regarding the actual capabilities and efficacy of the Products, as alleged in
19   the preceding paragraphs.

20         134.   Defendant's advertising claims and omissions about the Products, as
21   alleged in the preceding paragraphs, are false, deceptive, misleading, and
22   unreasonable:

23              a.   Products falsely depicted that they have been tested and were
24                   capable of removing the harmful SARS-CoV-2 particles from the air,
25                   which Defendant and its agents prepared, approved, and disseminated
26                   statewide and nationwide. Specifically, Plaintiff relied on the press
27                   release published on September 1, 2021 that claims that "Medify Air

28

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

Purifiers Tested and Proven to Remove 99.9% of COVID-19/SARS-CoV-2 Airborne Particles."

  b. Products depicted a high CADR rating which was false and is not based on the AHEM industry standards;

  c. Products depicted that they were intended to purify larger areas/square footage than the square footage depicted by the industry standard testing.

135. The UCL prohibits "any unlawful, unfair... or fraudulent business act or practice." Cal. Bus & Prof. Code § 17200.

## A. "Unfair" Prong

136. Under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et. seq.,* a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

137. Defendant's action of advertising claims about the Products being able to remove SARS-CoV-2 particles from the air is false.

138. Defendant's action of false advertising of their Products' status causes injuries to consumers, who do not receive the promised quality products in proportion to their reasonable expectation or the amount that they pay for said products.

139. When Defendant claims the Products are tested "to successfully remove 99.9% of airborne COVID-19/SARS-CoV-2 particles," and that the Products have a 380 $m^3$/h CADR value (224 $f^3$/min) instead of the 206 $f^3$/min Energy Star value, they provide false promises to consumers and stifle competition in the marketplace.[15]

---

[15] *Medify Air Purifiers Tested and Proven to Remove 99.9% of COVID19/SARS-Cov-2 Airborne Particles*, YAHOO FINANCE (September 1, 2021), https://finance.yahoo.com/news/medify-air-purifiers-tested-proven-153600288.html?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuYmluZy5jb20v&guce_referrer_sig=AQAAAEXy3z91aClWYE6VicJf2QVaOYSJNqUr60ub3I3is5U_ChVLrfn_enIVl_N5Az

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

140.    Consumers cannot avoid any of the injuries caused by Defendant's false and misleading advertising of the Products.

141.    Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. In doing so, the courts "weigh the utility of the Defendant's conduct against the gravity of the harm alleged to the victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F. 3d 1152, 1169 (9th Cir. 2012).

142.    Here, Defendant's conduct of advertising their Products as having the capabilities "to successfully remove 99.9% of airborne COVID-19/SARS-CoV-2 particles" lacks reliable support to prove that the Products deserve this status, resulting in financial harm to consumers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of its harm.

143.    Some courts hold that the "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

144.    Defendant's advertising of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct.

145.    Defendant knew or should have known of their unfair conduct.

146.    As alleged in the preceding paragraphs, the material misrepresentations by Defendant detailed above constitute an unfair business practice within the meaning of California Business & Professions Code § 17200.

---

X7KK4XXEUUtX2NHFKXBfkQbKFqisHbWLzMBOa-8884fNw2GLE_L6G2Q0jFttBj4iVgyal7oEkUJCPMQhGMJkrx0hPTtHFdFRxaNp92ylrSMmcA (last accessed December 15, 2021).

*Medify Air – MA-40*, MEDIFY AIR, https://medifyair.com/products/medify-ma-40 (last accessed December 15, 2021).

*Medify Air – MA - 50*, MEDIFY AIR, https://medifyair.com/products/ma-50-air-purifier (last accessed December 15, 2021).

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

147.   There were reasonably available alternatives to further Defendant's legitimate business interests other than the conduct described herein. Defendant could have marketed the Products without making any false statements about the Products' falsely advertised uses and/or benefits. Defendant could have conducted the requisite testing in order to make its representations, prior to launching the Product as advertised – that it removes COVID-19, such that the claims, if so accurate, depicted the true capabilities of the Product.

148.   All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

149.   Pursuant to Business & Professions Code Section 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products. Likewise, Plaintiff and the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial.

150.   Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff paid an unwarranted premium for the Products. Plaintiff would not have purchased the Products he had known that Products were incapable of adequately removing COVID-19 airborne particles and thus were not able to deliver the advertised benefits.

**B.    "Fraudulent" Prong**

151.   California Business and Profession Code section 17200, *et seq*. considers conduct fraudulent and prohibits said conduct if it is likely to deceive members of the public. *Bank of the West v. Superior Court,* 2 Cal. 4th 1254, 553 (1992).

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

152.   Defendant's conduct of advertising false claims about the Products' ability "to successfully remove 99.9% of airborne COVID-19/SARS-CoV-2 particles" is likely to deceive members of the public.

153.   Defendant's advertising of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable and constitutes fraudulent conduct.

154.   Defendant knew or should have known of their fraudulent conduct.

155.   As alleged in the preceding paragraphs, the material misrepresentations by Defendant detailed above constitutes a fraudulent business practice in violation of California Business & Professions Code Section 17200.

156.   There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have marketed the Products without making any false statements about the Product's benefits/uses.

157.   All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

158.   Pursuant to Business & Professions Code Section 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products. Likewise, Plaintiff and the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial.

159.   Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiff paid an unwarranted premium for the Products. Plaintiff would not have purchased the Products if he had known

CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

that Defendant purposely deceived consumers into believing the Products were adequately tested to remove SARS-CoV-2 particles.

### C. "Unlawful" Prong

160.    California Business and Professions Code Section 17200, *et seq.,* identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

161.    Defendant's advertising of the Products, as alleged in the preceding paragraphs, violates California Civil Code Section 1750, *et seq.,* California Business and Professions Code Section 17500, *et seq.*

162.    Defendant's packaging, labeling, and advertising of the Products, as alleged in the preceding paragraphs, are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct.

163.    Defendant knew or should have known of its unlawful conduct.

164.    As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unlawful business practice within the meaning of California Business and Professions Code Section 17200.

165.    There were reasonably available alternatives to further Defendant's legitimate business interests other than the conduct described herein. Defendant could have refrained from advertising claims regarding the Products that lacked any reliable evidence.

166.    All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

167.    Pursuant to Business and Professions Code Section 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising of the Product. Likewise, Plaintiff and the Class seek an order requiring Defendant to disclose such

misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial. Plaintiff also seeks attorneys' fees and costs.

168.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff paid an unwarranted premium for the Products. Plaintiff would not have purchased the Products if he had known that Defendant purposely deceived consumers into believing the Products were adequately tested to remove SARS-CoV-2 particles and that the Products have a 380 m$^3$/hr CADR value (224 f$^3$/min) instead of the 206 f$^3$/min measured Energy Star value.

169.    Defendant is falsely claiming that their Products are tested to successfully remove 99.99% of airborne COVID-19/SARS-CoV-2 particles – a deadly, highly contagious virus that has poured fear into peoples' daily lives. In doing so, Defendant has enticed Plaintiff and the Class to purchase the Products with despicable, conscious disregard for Plaintiff's safety, because the Products have not in fact been tested to remove SARS-CoV-2 particles from the air. Furthermore, Defendant maliciously misrepresents the efficacy of the air purifiers (including but not limited to CADR-related representations and sq footage). In fact, as discussed above, Defendant is well aware based on its own testing submitted to the EPA to obtain energy star that its CADR and square footage are inaccurate. As a result of Defendant's fraudulent and malicious acts, Plaintiff seeks exemplary or punitive damages under California Civil Code § 3294.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA. 90265

## COUNT FOUR

### Breach of Express Warranty

### (*On Behalf of the Nationwide Class and California Subclass*)

170.    Plaintiff repeats and realleges all allegations of the previous paragraphs and incorporates the same as if set forth herein at length.

171.    Defendant expressly warrants that the Products are "Tested to Remove 99.9% of Airborne COVID-19/SARS-CoV-2 Particles", and that the Products have a 380 $m^3$/h CADR value (which is 224 $f^3$/min) as set forth above:

    a.    Products falsely depicted that they have been tested and were capable of removing the harmful SARS-CoV-2 particles from the air, which Defendant and its agents prepared, approved, and disseminated statewide and nationwide. Specifically, Plaintiff relied on the press release published on September 1, 2021 that claims that "Medify Air Purifiers Tested and Proven to Remove 99.9% of COVID-19/SARS-CoV-2 Airborne Particles."

    b.    Products depicted a high CADR rating which was false and is not based on the AHEM industry standards;

    c.    Products depicted that they were intended to purify larger areas/square footage than the square footage depicted by the industry standard testing.

    d.    Defendant's claims constitute an affirmation of fact, promise, and/or description of the goods that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise. Plaintiff placed importance on Defendant's claims.

    e.    All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

44

CLASS ACTION COMPLAINT

f.    Defendant breached the terms of the contract, including the express warranties, with Plaintiff and the Class by not providing Products that conforms to the advertising and label claims.

g.    As a result of Defendant's breach of contract, Plaintiff and the Class have been damaged in the amount to be determined at trial.

172.    Defendant is falsely claiming that their Products are tested to successfully remove 99.99% of airborne COVID-19/SARS-CoV-2 particles – a deadly, highly contagious virus that has poured fear into peoples' daily lives. In doing so, Defendant has enticed Plaintiff and the Class to purchase the Products with despicable, conscious disregard for Plaintiff's safety, because the Products have not in fact been tested to remove SARS-CoV-2 particles from the air. Furthermore, Defendant maliciously misrepresents the efficacy of the air purifiers (including but not limited to CADR-related representations and sq footage). In fact, as discussed above, Defendant is well aware based on its own testing submitted to the EPA to obtain energy star that its CADR and square footage are inaccurate. As a result of Defendant's fraudulent and malicious acts, Plaintiff seeks exemplary or punitive damages under California Civil Code § 3294.

## COUNT FIVE

### Unjust Enrichment

### (*On Behalf of the Nationwide Class and California Subclass*)

173.    Plaintiff repeats and realleges the allegations set forth above and incorporates the same as if set forth herein at length.

174.    By means of Defendant's wrongful conduct alleged herein, Defendant knowingly sold the Products to Plaintiff and members of the Class in a manner that was unfair, unconscionable, and oppressive:

a.    Products falsely depicted that they have been tested and were capable of removing the harmful SARS-CoV-2 particles from the air, which Defendant and its agents prepared, approved, and

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

disseminated statewide and nationwide. Specifically, Plaintiff relied on the press release published on September 1, 2021 that claims that "Medify Air Purifiers Tested and Proven to Remove 99.9% of COVID-19/SARS-CoV-2 Airborne Particles."

    b.    Products depicted a high CADR rating which was false and is not based on the AHEM industry standards.

    c.    Products depicted that they were intended to purify larger areas/square footage than the square footage depicted by the industry standard testing.

175.    Defendant knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Class. In so doing, Defendant acted with conscious disregard for the rights of Plaintiff and members of the Class.

176.    As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

177.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

178.    Under the common law doctrine of unjust enrichment, it is Inequitable for Defendant to be permitted to retain the benefits it received, without justification, from selling the Products to Plaintiff and members of the class in an unfair, unconscionable, and oppressive manner. Defendant's retention of such funds under such circumstances making it inequitable to retain the funds constitutes unjust enrichment.

179.    The financial benefits derived by Defendant rightfully belong to Plaintiff and members of the Class. Defendant should be compelled to return in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by Defendant.

180.    Plaintiff and members of the Class have no adequate remedy at law.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA, 90265

181.    Defendant is falsely claiming that their Products are tested to successfully remove 99.99% of airborne COVID-19/SARS-CoV-2 particles – a deadly, highly contagious virus that has poured fear into peoples' daily lives. In doing so, Defendant has enticed Plaintiff and the Class to purchase the Products with despicable, conscious disregard for Plaintiff's safety, because the Products have not in fact been tested to remove SARS-CoV-2 particles from the air. Furthermore, Defendant maliciously misrepresents the efficacy of the air purifiers (including but not limited to CADR-related representations and sq footage). In fact, as discussed above, Defendant is well aware based on its own testing submitted to the EPA to obtain energy star that its CADR and square footage are inaccurate. As a result of Defendant's fraudulent and malicious acts, Plaintiff seeks exemplary or punitive damages under California Civil Code § 3294.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment and relief on all Causes of Action as follows:

A.    An order certifying that the action may be maintained as a Class Action;

B.    An order enjoining Defendant from continuing to market and advertise the Products as challenged herein;

C.    Punitive damages;

D.    Reasonable attorney fees;

E.    Costs of this suit;

F.    Prejudgment and post-judgment interest; and

G.    Such other and further relief as the Court may deem necessary or appropriate.

## **JURY TRIAL DEMANDED**

182.    Plaintiff demands a jury trial on all triable issues.


DATED: January 7, 2022              **CLARKSON LAW FIRM, P.C.**

                                     By: /s/ *Yana Hart*
                                            Ryan J. Clarkson, Esq.
                                            Yana Hart, Esq.

                                            *Attorneys for Plaintiff*

CLASS ACTION COMPLAINT